# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Eugene Bonner,   :
                       Petitioner   :
                                  :
            v.            :   No. 292 C.D. 2025
                                  :
Department of Community   :
and Economic Development   :
(Office of Open Records),   :
                    Respondent   :   Argued: April 13, 2026


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
          HONORABLE MATTHEW S. WOLF, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE WOLF                                    FILED:  July 16, 2026


Michael Eugene Bonner (Requester) petitions for review of the February 5, 2025 Final Determination of the Office of Open Records (OOR).  The Final Determination granted in part and denied in part Requester's appeal of the Department of Community and Economic Development's (Department) decision of October 4, 2024, which provided Requester with 34 pages of records in response to his request for documents under the Right-to-Know Law (RTKL).[1]  After careful review, we affirm in part, reverse in part, and remand for further proceedings.

## I. Background

On August 29, 2024, Requester and Dailey LLP filed a request (Request) with the Department seeking:

---
[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

> Documents and records containing, reflecting or referencing any communications by, between and/or among some or all of the following: (a) Capital Region Water; (b) the [Department]; (c) the Office of the Governor of Pennsylvania; and/or (d) the Office of General Counsel [("OGC")], including the respective employees, staff, consultants and/or attorneys of the foregoing entities (e.g., including individuals with email suffix "@pa.gov"), which in any way reference the Chester Water Authority, Stormwater Authority of the City of Chester [("City" or "Chester")], and/or Delaware County Regional Water Quality Control Authority (DELCORA) from January 1, 2024 to August 29, 2024.

Reproduced Record (R.R.) 15a. The Request explained further that "it appears the Receiver[2] has been working on a plan to monetize the above-referenced authorities for some time now, and these requests are directed to the [Department] to understand its involvement in such effort." *Id.* at 16a.

The Department invoked a 30-day extension, 65 P.S. § 67.902(b)(2), and on October 4, 2024, granted in part and denied in part Requester's Request. *Id.* at 5a-7a. In so granting, the Department provided Requester with 34 pages of responsive records. *Id.* at 5a. From those pages, the Department redacted or withheld (1) personal identification information; (2) material reflecting internal, predecisional deliberations, and (3) material protected by the attorney-client privilege and/or the attorney work product doctrine. *Id.* at 6a (citing 65 P.S. §§ 67.102, 67.305, 67.706 and 67.708(b)(6)(i)(A) and (10)). The Department also noted that it withheld certain entire records on these same bases.

---

[2] Vijay Kapoor presently serves as the Receiver for the City of Chester, a financially distressed municipality under the Municipalities Financial Recovery Act, Act of July 10, 1987, P.L. 246, No. 47, *as amended*, 53 P.S. §§ 11701.101-11701.712, commonly referred to as "Act 47." Mr. Kapoor will hereinafter be referred to as the "Receiver."

Requester appealed the Department's decision to the OOR. The OOR invited the parties to supplement the record and file position statements, and directed the Department to notify any third parties of their ability to participate in the appeal process.

On November 7, 2024, the Department submitted a position statement reiterating its grounds for partially denying the Request. The Department also submitted an attestation of its Open Records Officer, Eileen Quinn.

Requester submitted a position statement asserting that the Department's production of records was incomplete, citing additional records he received from an identical request directed at the Office of General Counsel (OGC). Requester also asserted that the Department had not established the applicability of the attorney-client privilege, the attorney work product doctrine, or the predecisional deliberations exemption, and asked the OOR to perform *in camera* review. Through various orders the OOR requested additional evidence, inspection indexes, and clarification, and the Department responded by submitting, *inter alia*, three supplemental attestations by Ms. Quinn.[3]

On December 26, 2024, Tobey Daluz, Esq., of Ballard Spahr LLP, counsel to the City of Chester, filed a request to participate as a direct interest participant in the matter. The City explained that it became aware of the matter on December 6, 2024, via a letter from the Department. The City noted it objected to the disclosure of an unredacted copy of an engagement letter dated March 13, 2023, between Herbert, Rowland & Grubic, Inc. (HRG) and Ballard Spahr (HRG Letter).

---

[3] The "Supplemental Quinn Attestation" appears at pages 159a-65a of the Reproduced Record. The "Second Supplemental Quinn Attestation" appears at pages 174a-75a of the Reproduced Record. The "Third Supplemental Quinn Attestation" appears at pages 330a-32a of the Reproduced Record.

Despite the record being closed, the OOR granted the City direct interest participant status. On January 10, 2025, the OOR ordered the Department to produce a copy of the HRG Letter for *in camera* review.

The OOR issued a Final Determination on February 5, 2025, granting in part and denying in part Requester's appeal, and directing that some additional records or portions of records be disclosed. Requester timely petitioned this Court for review.

## II. Issues[4]

On appeal, Requester argues the OOR erred in (1) failing to order the Department to produce records that Requester identified as missing from its initial production of documents; (2) concluding that the Department acted in good faith in responding to the Request; (3) allowing the Department to withhold records under the RTKL's predecisional deliberations exemption; (4) allowing the Department to redact or withhold records based on the attorney-client privilege and the attorney work product doctrine; (5) granting the City of Chester direct interest participant status after the record closed; and (6) failing to resolve the City of Chester's claimed trade secret exemption under Section 708(b)(11) of the RTKL, 65 P.S. § 67.708(b)(11).

## III. Discussion

### A. Department's Good Faith Search for Records and October 4, 2024 Production of Documents

As Requester's first and second issues overlap substantially, we address them together. Requester maintains that the OOR erred in concluding that the

---

[4] This Court's standard of review of an OOR Final Determination is *de novo* and the scope of review is plenary. *Hunsicker v. Pa. State Police*, 93 A.3d 911, 913 n.7 (Pa. Cmwlth. 2014).

Department undertook a good faith search for responsive records based on the statements made in the Supplemental Quinn Attestation. According to Requester, this bad faith is evident from the following four categories of documents that the Department failed to produce in response to the Request: (1) parts of a May 16, 2024 email chain with the subject line "FW: [External] Chester City – 291 Dispositions" (May 16 Email Chain); (2) parts of a May 21, 2024 email chain with the subject line "Re: Receiver Information Request: SCC Management Plan" (May 21 Email Chain); (3) parts of a May 6, 2024 email chain with the subject line: "[External] FW: Copy of NDA to send to DCED" (May 6 Email Chain); and (4) emails between OGC and Lori K. Irwin, Esq., Chief Counsel of the Department (OGC Emails) that Requester received pursuant to an identical RTKL request directed to OGC.

Requester submits that in addition to the evidence of bad faith in the form of missing records, the OOR erred in accepting the generic explanations provided by the Department as to why the aforementioned documents were not produced. Requester submits that the Supplemental Quinn Attestation is conclusory, fails to explain the efforts undertaken to locate responsive documents, does not identify third parties and consultants from whom records were sought, does not explain what documents were reviewed as part of the Department's response process, only identifies record custodians by their initials, and fails to include what keywords the Department used to search its database for responsive records. Requester argues that this deficient attestation, paired with the missing records, establishes that the Department did not conduct a good faith search as required under the RTKL.

The Department responds that the OOR correctly found that the Supplemental Quinn Attestation refuted each of Requester's allegations as to

missing documents and was otherwise sufficient in terms of content and detail to evidence that a good faith search was conducted. It asserts that because Requester offered no competent evidence of bad faith, the averments set forth in the Supplemental Quinn Attestation must be accepted as true.

Section 901 of the RTKL provides, in relevant part, that

> [u]pon receipt of a written request for access to a record, an agency shall make a good faith effort to determine if the record requested is a public record, legislative record or financial record and whether the agency has possession, custody or control of the identified record, and to respond as promptly as possible under the circumstances existing at the time of the request.

65 P.S. § 67.901. We have described an agency's duty under Section 901 as follows:

> Upon receipt of a request, an open records officer must make a good faith effort to determine whether: (1) the record is a public record; and, (2) the record is in the possession, custody, or control of the agency. Section 901 also includes the duty to perform a reasonable search for records in good faith. As part of a good faith search, the open records officer has a duty to advise all custodians of potentially responsive records about the request, and to obtain all potentially responsive records from those in possession.
>
> When records are not in an agency's physical possession, an open records officer has a duty to contact agents within its control, including third-party contractors. Under Section 506(d) of the RTKL, 65 P.S. § 67.506(d), the agency is required to take reasonable steps to secure the records from the [contractor] and then make a determination if those records are exempt from disclosure.

6

*Uniontown Newspapers, Inc. v. Dep't of Corr.*, 185 A.3d 1161, 1171-72 (Pa. Cmwlth. 2018) (internal citations omitted). The agency bears the burden of proving that it does not have a requested record. *Mutchler v. Office of Admin.*, 334 A.3d 57, 62 (Pa. Cmwlth. 2025). To meet this burden, an agency may provide an unsworn attestation by the person who searched for the record or a sworn affidavit of nonexistence of the record. *Id.* A sworn affidavit made under the penalty of perjury may serve as sufficient evidentiary support under the RTKL, and the averments therein, absent competent evidence of bad faith, should be accepted as true. *Id.* A requester bears the burden of proving an agency committed bad faith through the production of evidence. *Uniontown Newspapers*, 185 A.3d at 1170-71. "After-discovered records are a type of evidence from which a court may discern bad faith." *Id.* (citing *Chambersburg Area Sch. Dist. v. Dorsey*, 97 A.3d 1281 (Pa. Cmwlth. 2014)).

### i. Department's Good Faith Search

The OOR concluded that the Department conducted a good faith search based on the following statements in the Supplemental Quinn Attestation:

> 4. Upon receipt of the above referenced Request, I submitted the Request to Department RTKL legal counsel, S.K., from the Governor's Office of General Counsel, in the normal course of activities, for legal review of the Request.

> 5. From that review, it was determined that record custodians A.S., R.V., and C. D. were the individuals most likely to determine where and from whom to locate all Department records and non-Department records relevant to the Request because of these individuals' degree of involvement with the subject matter.

7

6. It was determined that (a) record custodians would receive the request and supply records from as many sources as necessary, including other custodians and/or third parties; and (b) a keyword search of Relativity program be executed.

\*\*\*

9. A keyword search of the Relativity program provides access to keyword-triggered records located on the Department server.

10. Here, the keywords utilized for the Relativity program search of the Department server were taken directly from the specific language found in the Request.

11. The record custodians referenced above identified and supplied records from themselves, other Department custodians, third parties, and consultants relevant to the Request.

12. I have confirmed that the records supplied from the record custodians represent the totality of available records from those identified sources regarding the subject matter of the Request from Department and non-Department sources.

13. The records supplied from record custodians A.S., R.V., and C.D. and obtained from the Relativity search were reviewed for responsiveness, relevancy, RTKL exceptions, and other exceptions.

R.R. 160a-61a.

In advancing his argument that the Supplemental Quinn Attestation is deficient, Requester cites the OOR's Final Determination in *Hughes v. Exeter Township* (OOR Dkt. AP 2020-0209, filed March 4, 2020). In *Hughes*, the OOR determined that an attestation of an agency's open records officer was insufficient to establish that the agency discharged its duty to perform a good faith search for responsive records under Section 901 of the RTKL. Specifically, the OOR found

8

that the attestation did not adequately explain why the agency chose three specific keyword search terms or why the agency only searched the subject line of emails rather than their full text. Accordingly, the OOR concluded that it was likely records responsive to the request were missed and granted the requester's appeal.

### ii. Requester's Evidence of Bad Faith (Missing Records)

Requester argues that in addition to the deficiencies contained in the Supplemental Quinn Affidavit, he provided specific evidence of the Department's bad faith by identifying missing records. In rejecting this argument, the OOR found that the Supplemental Quinn Attestation "refute[d] each of the Requester's allegations and present[ed] evidence that [the Department] conducted a search reasonably designed to locate responsive records and reviewed the public nature of the records discovered by this search." Final Determination at 8. In so holding, the OOR relied specifically on the following portions of the Supplemental Quinn Attestation:

> 22. In response to a specific allegation by Requesters, regarding notification and inquiry with third parties/consultants, records were sought from and received involving third parties and consultants. The above referenced memorandum of understanding and other emails involved such third parties and consultants. See Exemption Log.
>
> 24. In response to a specific allegation by Requesters, there were no other emails reviewed or located as a part of the May 6, 2024 email thread between Michael Doweary and Vijay Kapoor amongst the records received from records custodians and the Relativity search for the Department's record production. See Exemption Log.
>
> 25. In response to a specific allegation by Requesters, per the record production by OGC regarding Ms. Lori Irwin

9

emails, such emails were not located and/or made available for production from records custodians and the Relativity search for the Department's record production. *See* Exemption Log.

26. In response to a specific allegation by Requesters, the Department did not remove nonresponsive records, specifically emails contained within email threads, from the Department record production. *See* Exemption Log.

R.R. 163a-64a. We begin first with the allegedly missing emails exchanged between Ms. Lori Irwin, the Department's Chief Counsel, and OGC.

### iii. OGC Emails

Requester argues that in a separate but identical RTKL request, OGC produced emails between the OGC and Ms. Irwin that referenced the Chester Water Authority. *See* R.R. 140a-42a (RTKL Request to OGC) and 144a-55a (OGC's production of emails involving Ms. Irwin). Requester argues that the Department's failure to produce the same documents in response to the exact same request is evidence of the Department's bad faith and inadequate search for documents. Our review of OGC's production shows one email dated August 27, 2024 between Ms. Irwin and Stephen Kovatis of OGC exchanging what appears to be portions of a news article discussing the Chester Water Authority. R.R. 154a-55a. The Supplemental Quinn Attestation simply states that "such emails were not located and/or made available for production from records custodians and the Relativity search for the Department's record production." R.R. 163a.

This Court cannot gather why this email was not produced by the Department as responsive to the Request, which seeks, *inter alia*, communications between the Department and OGC that "in any way reference the Chester Water Authority." R.R. 15a. We find the Department's explanation wholly deficient as to

10

why this email was not part of its initial record production. Moreover, due to the failure to disclose this record, the Court has its doubts about the veracity of the Department's keyword search.[5] While the Supplemental Quinn Attestation states that a keyword search was performed using terms directly from the language of the Request, "Chester Water Authority" was specifically referenced in the email between Ms. Irwin and Mr. Kovatis, and was inexplicably not produced. We agree with Requester that the OOR erred in concluding the Department conducted a good faith search in the face of this competent evidence of bad faith.

### iv. May 6, 16, and 21 Email Chains

Turning next to the other allegedly missing records – the May 6, 16 and 21 Email Chains, Requester argues that additional emails in the chains should have been produced and the Supplemental Quinn Attestation only provides a generic

---

[5] At oral argument, the Department's counsel indicated, for the first time in these proceedings, that the Department used four terms in the keyword search for records. Following oral argument, the Department filed a "Motion for Correction/Clarification of Oral Argument," which stated that counsel misspoke to the panel at oral argument and that:

> the search terms that were used for the Relativity search were: 1) "Chester Water Authority"; 2) "Stormwater Authority"; 3) "Delaware County Regional Water Quality Control Authority"; 4) "DELCORA"; 5) "CWA"; and 6) all instances of the words "Chester" and "Authority" appearing within five words of each other.

Motion for Correction ¶ 3. Requester filed an answer to the Motion for Correction stating that the Department's decision to reveal the keyword search terms for the first time at oral argument before this Court is further evidence of bad faith, and that the Department's timing prejudiced Requester because it failed to give him proper time (aside from one minute of rebuttal) to respond. We agree with Requester. First, counsel's statements about the keywords used by the Department in its search, both at oral argument and in the Motion for Correction, are not part of the certified record and will not be considered by this Court on appeal. *HYK Constr. Co., Inc. v. Smithfield Twp.*, 8 A.3d 1009, 1017 (Pa. Cmwlth. 2010) ("An appellate court may consider only the facts which have been duly certified in the record on appeal."). Second, we also question the Department's decision to reveal the keyword search terms for the first time during, and following, oral argument before this Court. The Department's "eleventh hour" disclosure of these keyword search terms does not strike the Court as a showing of good faith—but rather the opposite.

statement that the Department did not remove nonresponsive records. As for the May 6 Email Chain, Requester argues the subject line indicated that it was forwarding a previous email, but that previous email was not produced. R.R. 42a. As for the May 16 Email Chain, Requester asserts that the email produced discusses information "below," which references the last email in the chain, and argues that email should have been produced. R.R. 63a. As for the May 21 Email Chain, Requester notes that the email produced states: "Thank you so much for this information and context – it is very helpful." R.R. 68a. However, the email containing the "information and context" was not produced.

In arguing that additional portions of the above email chains were required to be disclosed, Requester cites to *Ference v. Sewickly Borough* (OOR Dkt. AP 2020-0095, Feb. 13, 2020) for the proposition that "an agency may not redact 'nonresponsive' information from responsive records." *Ference*, Final Determination at 11.

Requester's reliance on the OOR's Final Determination in *Ference* is misplaced. While it is true that an agency may generally not redact nonresponsive information from responsive records, this Court has explained that "any email within an email 'chain' can be *separately* identified and held from disclosure as being non-responsive to the original request." *Haverstick v. Pa. State Police*, 273 A.3d 593, 600 n.6 (Pa. Cmwlth. 2022) (emphasis added). Accordingly, the RTKL does not require the entirety of an email chain to be produced if one email in such thread is deemed responsive. Rather, each email constitutes a separate record for purposes of the RTKL and is evaluated on an individual basis. Accordingly, entire email chains need not be produced as a matter of law.

12

However, we agree with Requester that the Supplemental Quinn Attestation states that the additional emails identified by Requester were nonresponsive to the Request based on the Department's keyword search. Because we lack confidence in the veracity of the Department's initial search for records, we cannot conclude with certainty that these additional emails in the chain were properly withheld.[6]

For these reasons, we conclude that the OOR erred in concluding that the Department conducted a good faith search for records in accordance with Section 901 of the RTKL. Accordingly, we reverse the OOR's Final Determination on this point and remand to the OOR to direct the Department to conduct an adequate search. For completeness, we address Requester's arguments relating to the documents already produced by the Department.

## B. Predecisional Deliberations Exemption

Requester next argues that the OOR erred in withholding certain documents on the basis of the predecisional deliberations exemption found in Section 708(b)(10)(i)(A) of the RTKL, 65 P.S. § 67.708(b)(10)(i)(A). Requester again points to the Supplemental Quinn Attestation, which he argues contains only generic assertions that the records at issue reflect predecisional deliberations, and lack the specificity required to employ the exemption. Requester asks this Court to direct production of all identified responsive materials in unredacted form. The Department responds that the OOR correctly determined it established entitlement to the exemption by a preponderance of the evidence.

Section 708(b)(10)(i)(A) of the RTKL provides:

---

[6] While we do not direct disclosure of the additional emails in the May 6, 16, and 21 Email Chains at this time, we note that some of those items may be responsive to the Request when the Department performs an adequate good faith search.

13

(b) Exceptions.--Except as provided in subsections (c) and (d), the following are exempt from access by a requester under this act:

. . . .

(10)(i) A record that reflects:

(A) The internal, predecisional deliberations of an agency, its members, employees or officials or predecisional deliberations between agency members, employees or officials and members, employees or officials of another agency, including predecisional deliberations relating to a budget recommendation, legislative proposal, legislative amendment, contemplated or proposed policy or course of action or any research, memos or other documents used in the predecisional deliberations.

65 P.S. § 67.708(b)(10)(i)(A). This Court has explained that to establish the predecisional deliberation exemption, an agency is required to establish: "(1) the information is internal to the agency; (2) the information is deliberative in character; and[ ] (3) the information is prior to a related decision, and thus 'predecisional.'" *Pa. Public Util. Comm'n v. Nase*, 302 A.3d 264, 272 (Pa. Cmwlth. 2023). The agency is required to prove its entitlement to the exemption by a preponderance of the evidence. 65 P.S. § 67.708(a)(1).

In concluding that the Department met its entitlement to the exemption for certain records, the OOR relied on the following statements in the Supplemental Quinn Attestation:

16. A portion of the records mandated removal or redaction because they reflected the internal, predecisional deliberations between Department employees and employees of [OGC], and the Governor's office regarding proposed courses of action; specifically, the records show

14

discussions of proposed courses of action and documents being used to determine such courses of action between the Department, [OGC], and the Governor's office, concerning decisions relevant to the subject matter of the Request, specifically the City['s] water authorities, prior to any decisions being rendered.

17. Here, in fifteen separate instances, records were redacted (ten times) per sections 706 and 708(b)(10) of the RTKL or removed (five times) per section 708(b)(10) of the RTKL. Such records were redacted because they reflected predecisional deliberations between one agency or two agencies about a decision in connection [with] Chester water authorities prior to any decision being rendered. The records were removed because the documents were the subject of the [Department's] internal predecisional deliberations and there remained nothing to share with Requester[] after the subjects of the predecisional deliberations were removed.

***

27. Four separate and distinct documents (namely (a) "Acquisition W. 2nd Street Summary 2024"; (b) "Letter of Interest – Kerlin & 700 W. 2nd"; (c) "PHRG Survey"; and (d) "Disposition Plan"; See Exemption Log p. 7) and one email were removed from the Department record production as the subject of predecisional deliberations because after redacting the subject of the predecisional deliberations, there remains nothing to be shared with Requesters. 65 P.S. § 67.708(b)(10); See McGowan v. Pa. Dep't. of Env't. Prot., 103 A.3d 374, 382-383 (Pa. Cmwlth. Ct. 2014); See Exemption Log.

28. A May 20, 2024 email from Brian Chalfant to Cody Deal with subject "Receiver Information Request: SACC Management Plan" was removed from the Department record production as the subject of and reflective of predecisional deliberations because after it was redacted, there remained nothing further of the email

15

communication to be shared with Requester[] in the record production....

R.R. 161a-62a, 164a.

This Court addressed the sufficiency of an affidavit to establish the predecisional deliberation exemption in *Office of Governor v. Scolforo*, 65 A.3d 1095 (Pa. Cmwlth. 2013). In that case, the Governor's Office asserted it properly withheld calendar entries that indicated the subject of internal meetings pursuant to the predecisional deliberation exemption. In support of its claimed exemption, the Governor's Office submitted an affidavit stating that the information "redacted was for internal meetings ... and reflected predecisional deliberations with regard to the subject matter reflected on the index." *Id.* at 1103-04. Specifically, the affidavit stated that the redactions at issue "were reflective of internal deliberations that preceded decisions related to subjects including the transition into the new administration, personnel, budgetary and policy decisions, related courses of actions and implementation of changes in the direction of the administration." *Id.* at 1104. In analyzing the affidavit, the *Scolforo* Court explained:

> Affidavits are the means through which a governmental agency details the search it conducted for the documents requested and justifies nondisclosure of the requested documents under each exemption upon which it relied upon. The affidavits must be detailed, nonconclusory, and submitted in good faith.... Absent evidence of bad faith, the veracity of an agency's submissions explaining reasons for nondisclosure should not be questioned.

*Id.* at 1103. "[G]eneric determination or conclusory statements are not sufficient to justify the exemption of public records." *Id.* Ultimately, this Court found the affidavit lacked sufficient detail to establish the exemption. We explained:

16

The Affidavit contains no further specifics. It is, therefore, without more, not sufficient to prove that the records are exempt. While the Affidavit tracks the language of the exception it presupposes, rather than proves with sufficient detail, that the redacted Calendar entries are reflective of internal deliberations and, therefore, exempt from disclosure. It is not enough to include in the Affidavit a list of subjects to which internal deliberations may have related. The Affidavit must be specific enough to permit the OOR or this Court to ascertain how disclosure of the entries would reflect the internal deliberations on those subjects. Because this Affidavit is not detailed, but rather conclusory, [] it is not sufficient, standing alone, to prove that the Calendar entries are exempt from disclosure.

*Id.* at 1104 (internal citation omitted).

The Department argues *Scolforo* is distinguishable because the OOR did not rely solely on the Supplemental Quinn Attestation in concluding that the predecisional deliberation exemption applied. It argues that the OOR also conducted a review of emails that were produced but partially redacted based on the exemption. Unlike *Scolforo*, where the agency redacted calendar entries in their entirety, the Department asserts the records in the instant matter involved minimally redacted emails.

The Department's argument is unpersuasive, as it conflates the OOR's holding regarding some documents that were produced with minimal redactions and others that were withheld under the exemption altogether. Following a close review of the Supplemental Quinn Attestation, we agree with Requester that it lacks the necessary detail to prove the Department's entitlement to the exemption. Like the affidavit in *Scolforo*, the Supplemental Quinn Attestation largely tracks the language of the exemption but fails to include sufficient detail to prove it. Just as in *Scolforo*, paragraph 16 of the Supplemental Quinn Attestation includes merely a laundry list

of subjects to which internal deliberations may have related, which this Court has previously held "is not enough." *Scolforo*, 65 A.3d at 1104. Accordingly, we reverse the OOR's determination to the extent it redacted or withheld records on the basis of the predecisional deliberation exemption and direct the Department to disclose the records that were withheld on this basis.

## C. Attorney-Client Privilege and Attorney Work Product Doctrine

Requester next argues that the OOR erred in redacting and withholding documents pursuant to the attorney-client privilege and attorney work product doctrine based on the various Quinn Attestations. Similar to the arguments asserted above, Requester maintains that the Quinn Attestations are conclusory and insufficient to allow for meaningful analysis of whether the privilege or doctrine applies. Additionally, Requester submits the OOR erred in concluding that the attorney-client privilege and work product doctrine were not waived in relation to the HRG Letter when it was disclosed to the Department.

The Department responds that the OOR properly determined the Department exercised the attorney-client privilege and work product doctrine in regard to the requested records. It also argues that Requester relies on documents outside the record for its argument that the attorney-client privilege was waived in relation to the HRG Letter, and maintains this Court may not consider such argument.

Under the RTKL, records in possession of a Commonwealth agency are presumed to be public unless they are: (1) exempt under Section 708 of the RTKL; (2) "protected by a privilege;" or, (3) exempt under any other Federal or State law or regulation or judicial order or decree. Section 305 of the RTKL, 65 P.S. § 67.305. Section 102 of the RTKL defines "privilege" as including both the "[t]he attorney-

18

work product doctrine, [and] the attorney-client privilege. . . ." 65 P.S. § 67.102. In *Levy v. Senate of Pennsylvania*, 65 A.3d 361 (Pa. 2013), our Supreme Court expounded on the attorney-client privilege in the context of RTKL cases, stating:

> This Court has repeatedly noted that the attorney-client privilege is deeply rooted in our common law and is the most revered of our common law privileges. The General Assembly has defined attorney-client privilege identically for purposes of criminal and civil law .... We recently observed that the purpose of the attorney-client privilege is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. We acknowledged, however, that the attorney-client privilege is often in tension with the truth-determining process of the justice system, and, in this case, with the [RTKL's] goal of government transparency. In balancing these competing purposes, we note that not all information passed between client and attorney is privileged, but rather the privilege is limited to communications related to the legal advice sought by the client.

*Id.* at 368-69 (citations omitted). The Supreme Court further explained:

> [T]he relevant question is whether the content of the writing will result in disclosure of information otherwise protected by the attorney-client privilege. For example, descriptions of legal services that address the client's motive for seeking counsel, legal advice, strategy, or other confidential communications are undeniably protected under the attorney client privilege. In contrast, an entry that generically states that counsel made a telephone call for a specific amount of time to the client is not information protected by the attorney-client privilege but, instead, is subject to disclosure under the specific provisions of the [RTKL].

19

*Id.* at 373. In order to establish the application of the attorney-client privilege, an agency must demonstrate the following:

> (1) The asserted holder of the privilege is or sought to become a client;
>
> (2) The person to whom the communication was made is a member of the bar of a court, or his subordinate;
>
> (3) The communication relates to a fact which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort; and
>
> (4) The privilege has been claimed and is not waived by the client.

*Couloumbis v. Senate of Pa.*, 300 A.3d 1093, 1102 (Pa. Cmwlth. 2023). The work product doctrine is closely related to the attorney-client privilege but provides broader protection. *Bagwell v. Dep't of Educ.*, 103 A.3d 409, 415 (Pa. Cmwlth. 2014). While the attorney-client privilege protects confidential communications, the work product privilege only applies to records that are the work product of an attorney and may extend to the product of an attorney's representative secured in anticipation of litigation. *Id.* In the context of the RTKL, the work product doctrine protects the "mental impressions, theories, notes, strategies, research and the like created by an attorney in the course of his or her professional duties, particularly in anticipation or prevention of litigation" from disclosure. *Id.* at 416 (quoting *Levy v. Senate of Pa.*, 94 A.3d 436, 443 (Pa. Cmwlth. 2014)). The party asserting waiver of a privilege bears the burden of proof. *Id.* at 420 (acknowledging that requesters in the RTKL context are procedurally disadvantaged under this burden shifting scheme but nevertheless upholding it).

20

The OOR concluded that with the exception of two sentences of a May 9, 2024 email and the "General Project Overview" portion of the HRG Letter, the Department met its burden of proving that the records or enumerated portions thereof were protected by the attorney-client privilege or attorney work product doctrine. In so holding, the OOR relied on the following statements in the Quinn Attestations:

> 18. A portion of the records mandated redaction because they contained attorney-client privileged communications; specifically, the records reflect communications made by clients, namely the Governor's office and Department staff, to attorneys, who are active members of the Pennsylvania bar, to secure legal opinions and/or legal services connected with the City of Chester's water authorities, where the privilege is claimed by the clients, and the relevant records have not been disclosed in acts to waive privilege by the client(s).
>
> 19. Here, a May 23, 2024 email from Brian Chalfant to staff and legal counsel was redacted because it reflects attorney/client privilege. The email seeks a legal opinion of his legal counsel, who is a current member of the Pennsylvania Bar, about a proposed Pollutant Reduction Plan in connection with the City of Chester and relevant water authorities.
>
> 20. A portion of the records mandated removal or redaction because they contained attorney work product; specifically, the records show an attorney's mental impressions about matters relevant to the Request, namely the City of Chester's water authorities, for the attorney's client, which have not been disclosed in an act of waiver of privilege.
>
> 21. Here, one record was redacted and one record removed pursuant to the attorney work product privilege. An email from legal counsel to the client (where no one waived the privilege) reflecting the attorney's legal impressions about potential and current litigation involving the City of

Chester and/or its water authorities was redacted for the record production. Also, a memorandum of understanding housing the mental impressions of the same legal counsel (where no one waived the privilege) about the City of Chester and its water authorities was removed from the record production because there remained nothing left to supply Requesters after the legal mental impressions were removed from the referenced document.

R.R. 162a-63a (Supplemental Quinn Attestation) (internal citations omitted).

7. In accordance with a November 27, 2024 request for clarification, the referenced memorandum of understanding between Ballard Spahr and HRG Engineering reflects the former's legal impressions and potential legal strategy in connection with chapter 9 bankruptcy proceedings in the United States Bankruptcy Court for the Eastern District of Pennsylvania, case number 22-13032, where Ballard Spahr has been retained by the City of Chester Receiver as bankruptcy legal counsel. See enclosed December 6, 2024 Amended Exemption Log.

8. Also in accordance with a November 27, 2024 request for clarification, the referenced memorandum of understanding was supplied to the Chief of Staff for the City of Chester Receiver by Ballard Spahr.

9. Also in accordance with a November 27, 2024 request for clarification, HRG Engineering is being retained by Ballard Spahr as a consultant to supply advice and services concerning infrastructure assets which comprise the drinking water, stormwater, and wastewater systems serving the City of Chester residents in connection with the above referenced bankruptcy proceedings.

R.R. 175a (Second Supplemental Quinn Attestation).

5. The referenced HRG Engagement Letter is the same document as the referenced memorandum of understanding. By way of clarification, the referenced document details City of Chester asset valuation and

utility analysis to be performed by HRG in connection with chapter 9 bankruptcy proceedings in the United States Bankruptcy Court for the Eastern District of Pennsylvania, case number 22-13032. By way of further clarification, the referenced document was signed on April 20, 2023, however, was dated March 13, 2023.

R.R. 331a (Third Supplemental Quinn Attestation).

On this point, we find no error in the OOR's conclusion that the Quinn Attestations show that the records seek legal counsel or contain an attorney's mental impressions regarding a legal matter, and were exchanged between an attorney and a client. We also find that the various Quinn Attestations sufficiently state why the privilege was invoked and provide adequate detail as to why the privilege extends to the record at issue. Moreover, the Department adequately stated that it is claiming the privilege and it has not been waived, and Requester has not offered specific evidence of waiver as to most of those documents.

Requester does argue, however, that he has provided specific proof that the privilege does not extend to the HRG Letter because it was an engagement letter between the City's counsel and HRG that was shared with the Department. Citing two exhibits appended to his brief, Requester notes that the Department regularly asserts the Receiver for the City of Chester is an independent legal entity. Thus, in sharing the HRG Letter with the Department, the privilege was waived. The OOR failed to address Requester's argument that the attorney-client privilege was waived in relation to the HRG Letter because the Receiver and the Department constitute separate legal entities. Accordingly, we remand to the OOR for consideration of this argument.

**D. City of Chester's Direct Interest Participant Status**

Requester next avers the OOR erred in granting the City direct interest participant status after the timeframe established in Section 1101(c)(1) of the RTKL. The Department responds that even if it was error to permit the City of Chester to participate as a direct interest participant, the error was harmless because it resulted in the OOR conducting *in camera* review of the HRG Letter and directing that portions of the letter be disclosed.

Section 1101(c) of the RTKL discusses direct interest participants, in relevant part, as follows:

> (c) Direct interest.—
>
> (1) A person other than the agency or requester with a direct interest in the record subject to an appeal under this section may, within 15 days following receipt of actual knowledge of the appeal but no later than the date the appeals officer issues an order, file a written request to provide information or to appear before the appeals officer or to file information in support of the requester's or agency's position.
>
> (2) The appeals officer may grant a request under paragraph (1) if:
>
> > (i) no hearing has been held;
> >
> > (ii) the appeals officer has not yet issued its order; and
> >
> > (iii) the appeals officer believes the information will be probative.

65 P.S. § 67.1101(c)(1)-(2).

The City filed a request to participate in the matter on December 26, 2024, and explained therein that "[t]he City did not become aware of the pendency of this appeal until December 6, 2024, when it received [a letter] from [the

24

Department] notifying the City that it may have an interest in this appeal." R.R. 190a. The City further explained that it "did not become aware of the documents at issue until it received those documents from [the Department] on December 13, 2024." *Id.* Accordingly, the City did not file its written request within 15 days of actual knowledge of the appeal, but it did timely file its request to participate once it learned of the relevant documents at issue.

In its final determination, the OOR justified its grant of direct interest participant status, citing the City's "direct interest in the matter and because the City's submissions are probative[.]" Final Determination at 3. This conclusion was accompanied by citations to Section 1102(a)(2) of the RTKL, which states an appeals officer is required "to review all information filed relating to the request" and "may admit into evidence testimony, evidence and documents that are reasonably probative and relevant to the matter at issue." 65 P.S. § 67.1102(a)(2). Additionally, the OOR cited Section 1102(b)(3), which states that "[i]n the absence of a regulation, policy or procedure governing appeals under this chapter, the appeals officer shall rule on procedural matters on the basis of justice, fairness and the expeditious resolution of the dispute." 65 P.S. § 67.1102(b)(3).

We conclude that the OOR did not err in granting the City direct interest participant status, albeit on a different basis. While the OOR focused on Section 1102(b) of the RTKL in explaining its reason for allowing the City to participate, it is clear that Section 1101(c) governs direct interest participants. Section 1101(c)(1) states that a person with a direct interest may submit a request to participate within 15 days of receipt of actual knowledge of the appeal, but before the appeals officer issues an order. Notably, Subsection (c)(2) discusses when the appeals officer may grant a request and lists three prerequisites. Here, each of those prerequisites were

met: no hearing had been held; no order had been issued; and the OOR believed the City's information to be probative. Moreover, while the City learned generally of the litigation on December 6, 2024, it was not until December 13, 2024 that it learned of the actual documents at issue, which solidified its interest in the matter. Accordingly, under these specific facts, we do not find that the OOR erred in granting the City direct interest participant status.

### E. City of Chester's Claimed Trade Secret Exemption

Finally, Requester submits the OOR erred in failing to resolve the City's claim that the HRG Letter was exempt under Section 708(b)(11) of the RTKL, relating to records which constitute or reveal a trade secret or confidential proprietary information. Because we are remanding to the OOR to consider whether the attorney-client privilege was waived in relation to the HRG Letter, we decline to address this alternative basis for nondisclosure at this juncture. Should the OOR conclude that the attorney-client privilege was waived in relation to the HRG Letter, it should then address any alternative arguments for non-disclosure raised by the City at that time.

### IV. Conclusion

For the reasons set forth above, the OOR's Final Determination is affirmed in part, reversed in part, and remanded for further proceedings. Specifically, we reverse the OOR's conclusion that the Department conducted a good faith search for records in accordance with Section 901 of the RTKL. 65 P.S. § 67.901. We remand to the OOR to direct the Department to conduct a search for the items in the Request in accordance with its obligations under the RTKL.

26

We reverse the OOR's conclusion that the Department properly redacted or withheld documents on the basis of the predecisional deliberation exemption and direct disclosure of records withheld on that basis.

Finally, we affirm the OOR's conclusion that the Department properly claimed the attorney-client privilege and attorney work product privilege to all documents, with the exception of the HRG Letter. We remand to the OOR for an analysis of whether Requester met his burden of proving that the attorney-client privilege was waived with respect to the HRG Letter because it was shared with the Department. In the event the OOR concludes the HRG Letter is not protected by the attorney-client privilege, it shall consider the City's alternate arguments for nondisclosure.

_____
MATTHEW S. WOLF, Judge

27

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Eugene Bonner,      :
            Petitioner    :
                       :
        v.            :   No. 292 C.D. 2025
                       :
Department of Community      :
and Economic Development      :
(Office of Open Records),        :
            Respondent  :

# O R D E R

AND NOW, this 16th day of July 2026, the February 5, 2025 Final Determination of the Office of Open Records is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings in accordance with the foregoing Memorandum Opinion.

Respondent's Motion for Correction/Clarification of Oral Argument is DENIED.

Jurisdiction relinquished.

---

MATTHEW S. WOLF, Judge